UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON MCCOY,<br><br>    Plaintiff,<br><br>    v.<br><br>SKY MASSEY, et al.,<br><br>    Defendants. | No.  2:18-cv-2180 WBS AC P<br><br>FINDINGS AND RECOMMENDATIONS |

    Plaintiff, a state prisoner proceeding pro se, seeks relief under 42 U.S.C. § 1983.  The case is referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  The Third Amended Complaint, ECF No. 23, is now before the court for screening. Two previous versions of the complaint were screened and found not to state a claim for relief; plaintiff has twice been granted leave to amend.  ECF Nos. 14, 17.  For the reasons explained below, the undersigned recommends that this case proceed on Claim One of the Third Amended Complaint against defendants Massey and Canello only, and that all other claims and defendants be dismissed.

I.     SCREENING REQUIREMENT

    The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

1  "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[]
2  monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

3  A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact."
4  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th
5  Cir. 1984).  "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal
6  theories' or whose 'factual contentions are clearly baseless.'"  Jackson v. Arizona, 885 F.2d 639,
7  640 (9th Cir. 1989) (quoting Neitzke, 490 U.S. at 327), superseded by statute on other grounds as
8  stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).  The critical inquiry is whether a
9  constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.
10  Franklin, 745 F.2d at 1227-28 (citations omitted).

11  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the
12  claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of
13  what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550
14  U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).
15  "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context
16  of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."  Wilhelm v. Rotman,
17  680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  In order to survive dismissal for failure
18  to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a
19  cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the
20  speculative level."  Twombly, 550 U.S. at 555 (citations omitted).  "'[T]he pleading must contain
21  something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally
22  cognizable right of action.'"  Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur
23  R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

24  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to
25  relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting
26  Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual
27  content that allows the court to draw the reasonable inference that the defendant is liable for the
28  misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  In reviewing a complaint under this

2

standard, the court must accept as true the allegations of the complaint in question, <u>Hosp. Bldg. Co. v. Trs. of the Rex Hosp.</u>, 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969) (citations omitted).

## II.     THE THIRD AMENDED COMPLAINT

Plaintiff brings suit against twelve defendants, eight of whom are members of the medical staff at Mule Creek State Prison, three of whom are doctors at San Joaquin General Hospital, and one of whom is a correctional officer at MCSP. ECF No. 23 at 1-2. The Third Amended Complaint presents five claims, all alleging deliberate indifference to plaintiff's serious medical needs, and all arising from the aftermath of an inmate assault on plaintiff on March 17, 2018, which broke plaintiff's jaw. Plaintiff alleges in sum as follows.

Claim One is stated against MCSP defendants Massey, a nurse; Canello, a correctional officer; and Horowitz, a doctor. Immediately following the assault plaintiff was taken to the Triage Treatment Area (TTA) and seen by Nurse Massey. Plaintiff realized from past experience that his jaw was broken. Plaintiff told Massey that his jaw was broken in the location of a previous fracture, that he was in extreme pain, and that he needed an x-ray, to see a doctor, and to be given pain medicine. These are "required" procedures when a broken bone is suspected. Defendant Massey failed to provide these things after being told by Officer Canello to only treat plaintiff for swelling. Officer Canello said that if Massey diagnosed a broken bone, they would have to write up the other inmate for assault which custody staff did not want to do "because the other inmate had did them a favor by assaulting [plaintiff]." Massey then ordered plaintiff returned to his cell. Thirteen hours later, plaintiff was returned to the TTA with even worse swelling and pain. RN Massey finally agreed to consult the on-call doctor and have plaintiff sent to an outside hospital for evaluation and treatment. Plaintiff claims that Massey delayed medically necessary evaluation and treatment, and that Dr. Horowitz, the on-call physician, had a duty to evaluate plaintiff personally rather than just relying on Massey's report and sending him to SJGH on that basis. These actions caused plaintiff unnecessary pain and suffering util he received fentanyl at the hospital thirteen hours after the assault. His pain was so severe that he

3

1  needed two doses of fentanyl.  ECF No. 23 at 4-9.

2  Claim Two is brought against SJGH doctors Willett, Kelly, and Lerokamos and Dr.
3  Horowitz of MCSP.  Plaintiff alleges in sum that these doctors consulted with each other and
4  collectively agreed, after plaintiff's fracture had been diagnosed by CT scan and he was provided
5  pain medication, to return him to the prison without surgically stabilizing his jaw.  Plaintiff
6  alleges that broken jaws are "typically" stabilized to prevent further damage, and that the
7  defendants' failure to do so caused him extreme pain and unspecified permanent damage.  Id. at
8  10-11.

9  Claim Three is brought against MCSP nurse Saini and the unnamed doctor who was on-
10 call for the Triage Treatment Area on March 20, 2018.  Plaintiff alleges that he was returned to
11 MCSP from the hospital with instructions to prison staff to notify SJGH doctors if his condition
12 worsened.  On March 20, plaintiff felt his jaw "snap" when he yawned, and realized that it had
13 "fractured further."  He went to the clinic and was seen by LVN Pelayo, who spoke to RN Saini
14 about whether plaintiff should come to triage for immediate attention.  Defendant Saini consulted
15 with the on-call doctor and reported back that staff were aware of plaintiff's condition, and that if
16 he wanted to be seen again he should submit a request for treatment form and someone would get
17 back to him in 24-48 hours.  On March 21 plaintiff was finally seen by a dentist, DDS Francis,
18 and dental x-rays revealed additional fractures to his jaw.  These were caused by the failure to
19 stabilize the fracture.  As a result, plaintiff experienced extreme pain and unspecified permanent
20 damage.  Id. at 12-14.

21 Claim Four is brought against MCSP doctors Horowitz and Smith (the Chief Medical
22 Examiner), Rudas, and Matharu; MCSP dentist Francis; and SJGH doctors Willett, Kelly, and
23 Lerokamos.  Plaintiff alleges that his jaw injury should have been treated from the outset by an
24 oral surgeon, but that MCSP had him initially treated at SJGH by an ENT doctor.  When plaintiff
25 was eventually seen at MCSP by DDS Francis, both his original injury and the subsequent
26 damage from defendants' failure to stabilize were identified as dental issues but plaintiff was
27 again sent to triage for care by a medical doctor (Dr. Rudas) and not an oral surgeon.  It was
28 MCSP's policy to send inmates with dental injuries to ENTs to save money.  This caused plaintiff

extreme pain and unspecified permanent damage. Id. at 15-17.

Claim Five is brought against the following MCSP defendants: CME Smith; doctors Rudas, Matharu, and Horowitz; and nurses Saini and Rana. Plaintiff alleges that he was returned to MCSP from SJGH with orders that he receive a liquid diet. It was the specified defendants' duty to ensure that he received the ordered liquid diet, but he did not get it until March 21, 2018. Plaintiff repeatedly told defendants that he could not chew and had orders for a liquid diet. Id. at 18-19.

### III. EIGHTH AMENDMENT STANDARDS

To state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299 (1991). A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. See Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990). The requisite state of mind is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4 (1992).

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Negligence and even recklessness are insufficient. Farmer, 511 U.S. at 835, 836-37. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842. A prison official acts with deliberate indifference only if he subjectively knows of and disregards an excessive risk to inmate health and safety. Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).

### IV. CLAIM FOR WHICH A RESPONSE IS REQUIRED

As amended, Claim One includes sufficient factual allegations to state a deliberate indifference claim against Nurse Massey and Officer Canello. Construed liberally and assumed to be true, plaintiff's allegations show that Massey knew that there was reason to believe

5

plaintiff's jaw had been broken and that he was in excruciating pain, but failed to take immediate action to address this emergency because of Officer Canellos' expressed hostility to plaintiff. The allegations are also sufficient to support the inference that Officer Canello deliberately interfered in plaintiff's medical care with disregard for his serious condition, which can support liability on the part of custodial staff as well as medical personnel. See Estelle, 429 U.S. at 104-105. Accordingly, the Third Amended Complaint should be served on defendants Massey and Canello and they should be required to respond to Claim One.

V.     FAILURE TO STATE A CLAIM

Claim One fails to state a claim against Dr. Horowitz. There are no factual allegations which would support a conclusion that she was subjectively aware that plaintiff urgently required x-rays or immediate transport to an outside hospital when he was first brought to the TTA, and that her alleged failure to act was accompanied by a culpable state of mind. She is not alleged to have been influenced by custody staff as Nurse Massey was. Plaintiff's allegations that Dr. Horowitz violated her "duty" to independently examine him, rather than relying on Nurse Massey's verbal report, suggests only negligence or medical malpractice, which are not actionable under § 1983 and the Eighth Amendment. See Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi, 391 F.3d at 1057.

Claims Two (failure to surgically stabilize jaw) and Four (treatment by M.D.s rather than by an oral surgeon) are fundamentally predicated on plaintiff's difference of opinion with medical professionals about the treatment that was appropriate for him. Such differences of opinion fail to state an Eighth Amendment claim as a matter of law. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996). Moreover, there are no concrete factual allegations as to any defendants named in these claims that demonstrate any of them acted with the requisite culpable state of mind. Negligence and malpractice are insufficient as a matter of Eighth Amendment jurisprudence, Broughton, 622 F.2d at 460; conclusory allegations as to an element of liability are insufficient as a matter of applicable pleading standards, Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Accordingly, Claims Two and Four fail to state viable claims for relief.

To the extent that Claim Three (involving plaintiff's experience of a "snap" while yawning, allegedly demonstrating a further jaw fracture in the days after his return to the prison) is based on harm from the failure of SJGH doctors[1] to surgically stabilize plaintiff's jaw, it does not state a claim for the same reason as Claim Two. To the extent that Claim Three seeks to impose liability for the delay of follow-up medical care after plaintiff reported feeling the "snap" on March 20, 2018, the claim fails because there are no facts showing a deliberately indifferent state of mind on the part of any defendant, or identifying concrete injury from the delay. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002) (to establish deliberate indifference arising from delay in providing care, plaintiff must show that the delay itself was harmful); see also Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

Finally, Claim Five (denial of liquid diet) fails for several reasons. First, plaintiff has previously been informed that more facts were needed to show a denial of nutrition significant enough to implicate constitutional standards. See Foster v. Runnels, 554 F.3d 807, 812-813 (9th Cir. 2009) (finding that denial of 16 meals over 23 days constitutes a serious deprivation within the meaning of the Eighth Amendment). The Third Amended Complaint specifies that plaintiff did not receive canned "Boost" nutrition drinks until March 21, but plaintiff has again failed to specify what foods were in fact provided to him. The availability of soft foods could have made the 2-3 day absence of a completely liquid diet constitutionally permissible; plaintiff has not presented facts from which the seriousness of the alleged deprivation can be assessed. Even if the court were to assume a serious deprivation, however, plaintiff's allegations do not identify actions of any particular named defendant that caused it. Under § 1983, liability lies only for actions that cause a constitutional violation. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

---

[1] Because of the other problems with plaintiff's claims, it is unnecessary to consider whether the SJGH defendants were acting under color of State law as required for § 1983 liability. See West v. Atkins, 487 U.S. 42, 58 (1988); Lopez v. Dep't of Health Servs., 939 F.2d 881 (9th Cir. 1991) (per curiam).

7

General allegations that medical personnel were responsible by virtue of their positions for ensuring plaintiff's nutrition are insufficient to support liability. See Iqbal, 556 U.S. at 676 (no respondeat superior liability under § 1983). Individual officials cannot be liable on the theory that something went wrong on their watch, but only if their own actions or omissions caused the constitutional violation. See Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011). Plaintiff's allegations that the defendants breached their professional duties to ensure his health and safety sound in negligence; they do not support an Eighth Amendment violation. For all these reasons, the allegations of Claim Five fail to state a claim for relief.

### VI.     FURTHER LEAVE TO AMEND IS NOT APPROPRIATE

Leave to amend need not be granted when amendment would be futile. Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013). A history of failure to cure deficiencies supports denial of further leave to amend. See Foman v. Davis, 371 U.S. 178, 182 (1962). Plaintiff has twice been informed of the legal standards governing Eighth Amendment deliberate indifference claims, the principles governing liability under 42 U.S.C. § 1983, and applicable pleading standards. With his Third Amended Complaint, he has succeeded in stating a claim against defendants Massey and Canello for the initial delayed response to his broken jaw. However, it appears from the history of amendments in this case that plaintiff has now presented all the facts known to him and his amendments have not resulted in any additional viable claims. The undersigned concludes that further leave to amend would be futile.

### CONCLUSION

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. This case proceed on Claim One of the Third Amended Complaint against defendants Massey and Canello only; and

2. All other claims and defendants be dismissed pursuant to 28 U.S.C. § 1915A.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 7, 2022

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE