UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON MCCOY,<br><br>  Plaintiff,<br><br>  v.<br><br>SKY MASSEY, et al.,<br><br>  Defendants. | No.  2:18-cv-02180 WBS AC<br><br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with this civil rights action filed pursuant to 42 U.S.C. § 1983.  Defendants have filed a motion for summary judgment.  ECF No. 74.  Plaintiff has filed an opposition, ECF No. 76, and defendants have filed a reply.  ECF No. 79.  For the reasons that follow, the undersigned recommends that the motion for summary judgment be granted.

I.    Allegations of the Amended Complaint

The events at issue in the operative third amended complaint occurred while plaintiff was an inmate at Mule Creek State Prison.  ECF No. 23.  On March 17, 2018, plaintiff was assaulted by another inmate and informed defendant Massey, who was a nurse, that he believed his jaw had been broken in the same area of a prior fracture and that he needed to see a doctor.  ECF No. 23 at 4.  Plaintiff specifically requested an x-ray and medication for the extreme pain that he was suffering.  ECF No. 23 at 4.  Plaintiff's jaw was visibly swollen, he was unable to fully open and close his mouth, and there was a clicking or grinding sound.  Id.  Plaintiff then overheard

1

defendant Canela,[1] a correctional officer, tell Nurse Massey to only treat plaintiff for facial swelling because he did not want to charge the other inmate with battery involving serious bodily injury.  ECF No. 23 at 4-5.  Based on this conversation, defendant Massey only provided plaintiff with ibuprofen for pain and did not allow him to see a doctor.  Id.  Defendant Canela escorted plaintiff back to his cell in a wheelchair.  Id. at 6.

Thirteen hours later, after a shift change at the prison, plaintiff requested medical treatment for his continuing severe jaw pain from L.V.N. Pelayo, who sent him back to the Triage Treatment Area ("TTA").  Id.  Plaintiff was once again evaluated by defendant Massey who finally agreed to consult with the on-call doctor.  Id.  The doctor sent plaintiff to an outside hospital for further evaluation and treatment for his jaw injury.  Id.  Once at the hospital, plaintiff received an x-ray and two separate doses of Fentanyl for his pain.  Id. at 7-8.  Plaintiff alleges that defendants Massey and Canela were deliberately indifferent to his serious medical needs by delaying the diagnosis of his jaw fracture and subjecting him to the unnecessary and wanton infliction of pain.  Id. at 7.  This delay also prevented plaintiff from receiving Cefazolin which is a prescription medication used to prevent and control swelling after an injury.  ECF No. 23 at 9.

II.   Preliminary Motions

Prior to the expiration of the dispositive motion deadline, plaintiff filed a motion to compel testimony of newly discovered witnesses (ECF No. 69) as well as a motion to appoint counsel and a neutral expert witness (ECF No. 71).  The court will address each motion in turn.

In the motion to compel, plaintiff requests a subpoena for two inmate witnesses pursuant to Local Rule 281 which governs pretrial statements.  ECF No. 69.  Plaintiff attached the evidence requested by defendants at his deposition, which includes relevant portions of his medical records and documents related to the exhaustion of administrative remedies.  ECF No. 69 at 14-195.  The court will consider these exhibits as evidence in opposition to defendants' summary judgment motion.  The remainder of plaintiff's motion is premature, however, because no trial date has been set nor pretrial statements ordered by the court pursuant to Local Rule 281.

---

[1] This defendant is identified as "Canello" in the amended complaint.  The Clerk of Court shall be directed to update the docket to Canela to reflect the correct spelling of this defendant's name.

2

Therefore, the undersigned denies plaintiff's motion for witness subpoenas as premature.[2]

In a separately filed motion, plaintiff requests the court to appoint him pro bono counsel and a neutral expert witness because this case requires technical or other specialized knowledge. ECF No. 71. Plaintiff acknowledges that his in forma pauperis status does not authorize the expenditure of public funds to employ expert witnesses. ECF No. 71 at 2-3. While plaintiff correctly cites Federal Rule of Evidence 706 as authority for the court's appointment of a neutral expert witness, the federal courts have uniformly held that an indigent prisoner litigant must bear his own costs of litigation, including witnesses. Tedder v. Odel, 890 F.2d 210, 211 (9th Cir. 1989) (per curiam). In this case, the medical issue before the court is not so complex that a neutral expert witness is required. To the extent that plaintiff seeks the appointment of counsel to retain an expert witness, plaintiff has not demonstrated extraordinary circumstances warranting the appointment of counsel. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983). Therefore, plaintiff's motion to appoint counsel and a neutral expert witness is denied.

### III. Motion for Summary Judgment

Defendants seek summary judgment on the grounds that: 1) plaintiff failed to exhaust his administrative remedies with respect to the claim against defendant Canela; 2) the evidence does not demonstrate an Eighth Amendment violation committed by either defendant; 3) defendants are entitled to qualified immunity; 4) defendants did not cause a delay in plaintiff's diagnosis or treatment; and, 5) plaintiff suffered no harm as a result of either defendant's conduct. ECF No. 74.

Plaintiff counters that there is a triable issue of fact as to deliberately indifferent medical care, and that his failure to exhaust his administrative remedies should be excused based on his fear of retaliation. ECF No. 76. Plaintiff submitted a Separate Statement of Disputed Facts in opposition. See ECF No. 76 at 20-24 ("PSDF"). This Statement of Disputed Facts is phrased in the form of questions and does not cite to any portions of the record, although plaintiff did attach

---

[2] Plaintiff is advised that the court will only order pretrial statements to be filed by the parties if defendants' motion for summary judgment is denied by the district judge assigned to this matter.

additional evidence in an apparent effort to demonstrate the existence of factual disputes. See ECF No. 76 at 26-31.

By way of reply, defendants submit that neither defendant had the authority to order an x-ray of plaintiff's jaw or to send him to an outside hospital for further treatment. ECF No. 79 at 4. Furthermore, they argue there is no evidence that defendant Massey failed to report the severity of plaintiff's symptoms to the on-call physician since plaintiff acknowledges that he was not a witness to any conversation between defendant Massey and the on-call physician. ECF No. 79 at 5.

## IV. LEGAL STANDARDS

### A. Summary Judgment Under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element

1    of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such
2    a circumstance, summary judgment should "be granted so long as whatever is before the district
3    court demonstrates that the standard for the entry of summary judgment, as set forth in Rule
4    56(c), is satisfied." Id.

5    If the moving party meets its initial responsibility, the burden then shifts to the opposing
6    party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.
7    Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the
8    existence of this factual dispute, the opposing party may not rely upon the allegations or denials
9    of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
10   admissible discovery material, in support of its contention that the dispute exists. See Fed. R.
11   Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a
12   fact "that might affect the outcome of the suit under the governing law," and that the dispute is
13   genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving
14   party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

15   In the endeavor to establish the existence of a factual dispute, the opposing party need not
16   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
17   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
18   trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)
19   (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the
20   "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see
21   whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal
22   quotation marks omitted).

23   "In evaluating the evidence to determine whether there is a genuine issue of fact, [the
24   court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls
25   v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the
26   opposing party's obligation to produce a factual predicate from which the inference may be
27   drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to
28   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

      B.      Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not by itself amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" Toguchi, 391 F.3d at 1058 (alteration in original) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

      V.      UNDISPUTED FACTS[3]

In the interests of judicial economy, the court will limit its discussion of the facts to those pertaining to the merits of plaintiff's deliberate indifference claim.

---

[3] Unless noted otherwise, the following facts are undisputed by the parties or are deemed undisputed by the court upon review of the record.

     During the relevant time period, plaintiff was an inmate at Mule Creek State Prison ("MCSP") who had not received any prior medical training. Defendants' Separate Statement of Undisputed Facts at ¶¶ 1-2 (hereinafter "DSUF"). Defendant Canela was employed as a Correctional Officer for the California Department of Corrections and Rehabilitation ("CDCR"). DSUF at ¶ 4 (hereinafter "DSUF"). Defendant Massey was employed as a Registered Nurse. DSUF at ¶ 3.

     On March 17, 2018, at around 7:00 a.m., plaintiff was injured by another inmate while in the yard of Facility A at MCSP. DSUF at ¶¶ 1, 5 (hereinafter "DSUF"); ECF No. 76 at 11, ¶ 4 (Plaintiff's Declaration). Defendant Canela then escorted plaintiff via a wheelchair to the Facility A yard nurse. DSUF at ¶ 6. Plaintiff indicates that he was transported in a wheelchair because he momentarily lost consciousness immediately following his assault. ECF No. 76 at 11, ¶ 7. The Facility A yard nurse examined plaintiff. DSUF at ¶ 6. After plaintiff was examined by the yard nurse, defendant Canela escorted plaintiff to the Triage Treatment Area ("TTA") of the prison where he was seen by defendant Massey at around 7:30 a.m.[4] DSUF at ¶ 7. Defendant Canela "remained close by while Nurse Massey examined McCoy." ECF No. 74-4 at 2 ¶ 4 (Canela Declaration).

     At the inception of defendant Massey's examination, plaintiff indicates that "officer Canela asked her to step into the hallway, where plaintiff overheard officer Canela instruct nurse Massey to only treat plaintiff for facial swelling because they didn't want to have to write [inmate] Lopez up for assaulting" plaintiff." ECF No. 76 at 12-13, ¶ 10 (Plaintiff's Declaration). According to defendant Canela, he never instructed defendant Massey to refuse to send plaintiff for outside medical treatment or interfered with plaintiff's medical treatment in any way. ECF No. 74-4 at 2, ¶ 6.

////

---

[4] The parties dispute why plaintiff was taken to the TTA with plaintiff indicating that the yard nurse instructed defendant Canela to take him there and defendant Canela indicating that plaintiff wanted to go there for further evaluation. Compare ECF No. 74-4 at ¶ 4 (Canela's Declaration) with ECF No. 76 at 12, ¶ 8 (Plaintiff's Declaration). The undersigned does not find this factual dispute to be material.

Defendant Massey initially observed "[s]welling on [the] leftlower jaw…" as plaintiff "came in via wheelchair" complaining of pain and indicating that he thought his jaw might be broken based upon his past experience of having a broken jaw. ECF No. 74-8 at 13 (Progress Note-Nurse Final Report); ECF No. 74-5 at 2 ¶ 4 (Massey Declaration); ECF No. 76 at 13 ¶ 11 (Plaintiff's Declaration). She then examined plaintiff and noted in her Progress Notes that his vital signs were stable; his breathing was even and unlabored; there was no swelling inside his mouth or breaks in the mucous membrane; his jaw was tender on palpation; no fracture was noted; and, there were no breaks in the skin on the jaw. DSUF at ¶ 8, 10. Although plaintiff was able to open his mouth fully for the assessment, he did wince when doing so. DSUF at ¶ 10. Defendant Massey communicated these findings to the on call physician who ordered Ibuprofen and an ice pack for plaintiff along with a follow-up appointment in 3-5 days with his primary care physician. DSUF at ¶ 10. Defendant Massey gave plaintiff the Ibuprofen and ice pack as ordered, and informed him that he had been cleared to return to his cell. DSUF at ¶ 11.

Plaintiff wanted to see the doctor and requested an X-ray of his jaw. ECF No. 76 at 13, ¶ 11. He got out of his wheelchair and got on the floor refusing to leave until he received this requested medical treatment. DSUF at ¶ 11. At that point, defendant Massey left the examination room and custodial officers, including defendant Canela, entered in order to escort plaintiff back to his cell. DSUF at ¶ 11. Eventually, plaintiff returned to his wheelchair and was escorted back to his building. ECF No. 74-4 at ¶ 5 (Canela Declaration).

Later that same day after defendant Canela and other second watch custody staff had left, plaintiff returned to the Facility A yard medical clinic. ECF No. 76 at 16, ¶ 20. He was sent back to the TTA where he was once again examined by defendant Massey. DSUF at ¶ 13. Plaintiff's jaw had swollen significantly more which was immediately noticeable upon visual inspection and upon palpation during the examination. DSUF at ¶ 13. Plaintiff was unable to open his mouth more than 1 centimeter; had difficulty opening it enough to take his oral temperature; and, had obvious difficulty speaking. Id. Defendant Massey contacted the on call physician again who gave the order to have plaintiff transported out to San Joaquin General Hospital. Id. Plaintiff was provided with another ice pack for the ride to the hospital. Id.

8

Based upon his review of plaintiff's medical records, Dr. Feinberg, an expert consulted by defendants, opined that plaintiff was discharged from San Joaquin General Hospital "with essentially the same course of treatment as he received when discharged from the TTA that morning by RN Massey." ECF No. 74-8 at 7, ¶ 24 (Feinberg Declaration). As a result, "no better outcome could have been expected had Mr. McCoy been sent out to the emergency department on the morning of March 17, 2018 rather than that evening." Id.

## VI. DISCUSSION

Based on the evidence presented in support of summary judgment, defendants have met their initial burden of demonstrating the absence of a genuine issue of material dispute that they were deliberately indifferent to plaintiff's jaw injury. The burden shifts to plaintiff to demonstrate that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Drawing all reasonable inferences from plaintiff's evidence in his favor as the non-moving party, the court finds that plaintiff's experience with a jaw fracture prior to the date in question is sufficient to establish a genuine issue of material dispute concerning plaintiff's serious medical need for treatment. Plaintiff does not have to be a medical expert to be able to testify about his medical symptoms after being assaulted and how these were similar to what he had experienced in the past. Therefore, the remaining issue is whether defendants' response to plaintiff's serious medical need demonstrated deliberate indifference. Jett v. Penner, 439 F.3d at 1096.

Plaintiff bases his Eighth Amendment claim against defendants on the delay in being sent to San Joaquin General Hospital. There is no dispute that the on-call physician was the individual who actually ordered plaintiff to be transported to the outside hospital. Plaintiff argues that defendant Massey was the "gate keeper" who prevented him from seeing a doctor and receiving an x-ray in the morning, but he does not present any evidence that she followed defendant Canela's instructions or otherwise failed to communicate the extent of plaintiff's injuries during her initial consultation with the on call physician. See ECF No. 23. This creates an evidentiary gap in plaintiff's deliberate indifference claim against defendants. Plaintiff tries to fill in this gap by relying on the conversation between defendants at the outset of plaintiff's examination to

support an inference that defendant Massey minimized plaintiff's symptoms to the on call physician. However, plaintiff concedes that he was not privy to the conversation between defendant Massey and the on call physician. Therefore, even if a jury credited plaintiff's testimony about the initial conversation between defendants, there would still be a complete lack of evidence that defendant Massey followed defendant Canela's instructions in failing to report plaintiff's condition to the on call physician. Without an evidentiary basis for that conclusion, plaintiff's evidence does not establish a triable issue that defendants were deliberately indifferent to his serious medical need. See Toguchi, 391 F.3d at 1058.

      Additionally, plaintiff has not come forward with any evidence to show that the delay he experienced in receiving outside care resulted in serious harm. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. Hallett, 296 F.3d at 745–46 (delay in providing care does not constitute deliberate indifference unless inmate suffers significant harm as a result of the delay). Plaintiff relies on his ongoing pain to establish harm resulting from the delay. However, that is the harm resulting from the initial injury itself. The declaration by Dr. Feinberg indicates that plaintiff received the same course of medical treatment at San Joaquin General Hospital as he received from defendant Massey in the TTA. Even after plaintiff was treated at the outside hospital, he was not prescribed Cefazolin which plaintiff indicates he should have received. Based on plaintiff's lack of medical training, he is not qualified to determine what medication is clinically indicated for a specific injury. Therefore, there is no evidence upon which a reasonable jury could return a verdict in plaintiff's favor on this point. Consequently, there is no genuine issue of material dispute that the delay caused plaintiff further harm. See Cramer v. Target Corp., No. 1:08–cv–01693–SKO, 2011 WL 5873401 at * 18 (E.D. Cal. Nov. 22, 2011) (emphasizing that "[i]t is the delay in treatment that is the essence of Plaintiff's civil rights claim for deliberate indifference, not the harm he suffered as a result of his injury in and of itself.").

      Based on the evidence presented in connection with the pending motion for summary judgment, the undersigned finds that no reasonable juror could conclude that defendants were deliberately indifferent to plaintiff's serious medical needs and therefore violated plaintiff's rights

under the Eighth Amendment.[5]  Accordingly, defendants' motion for summary judgment should be granted.

        Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of Court shall change the spelling of defendant Canello to Canela on the docket.
2. Plaintiff's motion to compel testimony of witnesses (ECF No. 69) is denied as premature.
3. Plaintiff's motion to appoint counsel and a neutral expert witness (ECF No. 71) is denied.

IT IS FURTHER RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 74) be granted.
2. The Clerk of Court enter judgment for defendants and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 6, 2024

                                                */s/ Allison Claire*
                                          ALLISON CLAIRE
                                          UNITED STATES MAGISTRATE JUDGE

---

[5]  In light of this recommendation, the undersigned declines to reach defendants' alternative arguments for summary judgment based on plaintiff's alleged failure to exhaust administrative remedies and the affirmative defense of qualified immunity.